IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    vs.<br><br>JOHN W. BURTON,<br><br>                Defendant. | Case No. 4:21CR3020<br><br>GOVERNMENT'S<br>SENTENCING BRIEF |

Comes now the United States of America, by and through the undersigned attorney, and hereby submits this brief regarding the issues to be addressed at Mr. John W. Burton's (hereafter "Burton") sentencing. The government objects to the omission in the Presentence Investigation Report (PSR) of an enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor. The government anticipates that the defendant will be objecting to enhancement's assessed for images involving prepubescent children, distribution of child pornography, images depicting sadistic or masochistic conduct, the number of images possessed by the defendant, and an enhancement for obstruction of justice. For the reasons discussed below, the government respectfully requests that the Court sustain the government's objection, and overrule the defendant's objections.

With those finding, the total offense level would be 40. Under criminal history category III, the guideline range would be 360 months to life. The defendant, however, faces a statutory maximum of twenty years imprisonment. Because the guideline range far exceeds the statutory maximum sentence, the government respectfully requests that the Court impose a sentence of 20 years in this case.

## BACKGROUND

Having presided over this case, the Court is well aware of the facts of this case. A summary of the facts is also provided in the PSR. (PSR ¶¶ 14-25) "Federal courts historically have exercised ... broad discretion to consider all

relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them." *Concepcion v. United States*, 142 S. Ct. 2389, 2398 (2022). "At an initial sentencing, Congress has provided generally that '[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense' when deciding what sentence to impose." *Id.* at 2400 (quoting 18 U.S.C. § 3661); *see also United States v. Hogue*, 66 F.4th 756, 764 (8th Cir. 2023). In making factual findings for sentencing, district courts may consider any facts adduced at trial of the defendant, or even from the trials of codefendants. *See Smith v. United States*, 206 F.3d 812, 813 (8th Cir. 2000).

## ARGUMENT

### I. Burton Engaged in a Pattern of Activity Involving the Sexual Abuse of a Minor.

The PSR overlooked the five-level enhancement which applies to defendants who "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor..." USSG § 2G2.2(b)(5). Burton has a prior conviction for sexually assaulting a child. (PSR ¶ 68) At sentencing, the government will be introducing into evidence Government's Exhibits 86, a certified copy of the court records for that conviction, and Government's Exhibit 87, the police reports related to that offense.[1] (Filing 98) Page 5 of Exhibit 87 (Filing 98-2) is the victim's handwritten account of what occurred. The victim explained that the assault was not a one-time occurrence, but rather happened on multiple occasions. The reports also include a letter Burton wrote to his family about the assault on pages 8 through 11 of Exhibit 87. Burton acknowledges in the letter that assaults occurred on more than one occasion. The facts of that offense provide the basis for the five-level enhancement in § 2G2.2(b)(5).

The Sexual Abuse or Exploitation enhancement outlined in subsection (b)(5) applies when "the defendant engaged in a pattern of activity involving

---

[1] The last exhibit offered by the government at trial was Exhibit 85. New exhibits offered by the government at sentencing will start at Exhibit 86.

sexual abuse or exploitation of a minor[.]" § 2G2.2(b)(5). What qualifies as a "pattern of activity involving the sexual abuse of a minor" is outlined in Application Note 1 as "any combination of two or more separate instances of sexual abuse or sexual exploitation of a minor by the defendant[.]" § 2G2.2 n.1. Any instance of sexual abuse or sexual exploitation of a minor should be considered regardless of whether the abuse or exploitation "(A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction of such conduct." The conduct considered for this enhancement "'is broader than the scope of relevant conduct typically considered under § 1B1.3." *United States v. Ashley*, 342 F.3d 850, 852 (8th Cir. 2003). Further, there are no time limitations on the conduct to be considered in the application of this enhancement. *United States v. Woodard*, 694 F.3d 950, 953-954 (8th Cir. 2012) (overturned on other grounds). However, while the conduct considered for Sexual Abuse or Exploitation enhancement includes production of child pornography, it "does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." § 2G2.2 n.1. Having sexually assaulted the same minor on multiple occasions, the Sexual Abuse or Exploitation enhancement applies to Burton's case.

The Court may receive records related to the prior conviction and the police reports over any hearsay objections. That evidence is admissible because the rules of evidence do not apply to sentencing hearings. Fed. R. Evid. 1101(d). The Eighth Circuit has also held that hearsay is admissible at sentencing, so long as it is reliable. *See United States v. Due*, 205 F.3d 1030, 1033 (8th Cir. 2000) and *United States v. Schlosser*, 558 F.3d 736, 740 (8th Cir. 2009).

The evidence is reliable in this case for a couple of reasons. First, those are the facts which formed the basis of the charge, and Burton pleaded guilty to the offense. Second, both the victim and Burton describe the assault as having occurred on multiple occasions.

Receiving hearsay evidence at sentencing also does not violate Burton's Sixth Amendment right of confrontation. *See United States v. Brown*, 430 F.3d 942 (8th Cir. 2005), *United States v. Pepper*, 747 F.3d 520, 525 n.5 (8th Cir. 2014); and *United States v. Rogers*, 465 F. App'x 581, 584 n.2. (8th Cir. 2012).

Because the above-described evidence shows that Burton engaged in two or more acts of sexual abuse of a child, the enhancement applies.

## II. The Child Pornography Burton Possessed Included Depictions of Prepubescent Children, as well as Sadistic, or Masochistic conduct.

The PSR assessed a two-level enhancement under § 2G2.2(b)(2) because the child pornography Burton possessed included prepubescent minors. (PSR ¶ 54) The PSR also assessed a four-level enhancement because some of the material depicted sadistic or masochistic conduct. (PSR ¶ 56) The government anticipates Burton will object to both enhancements.

The two-level enhancement applies when "the material involved a prepubescent minor or a minor who had not attained the age of 12 years…" § 2G2.2(b)(2). The four-level enhancement applies when "the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler…" § 2G2.2(b)(4). The sadistic, masochistic, or violent conduct enhancement applies "even if those pictured were not truly engaging in painful activities." *United States v. Schnekenburger*, 788 F. App'x 1044 (8th Cir. 2020) (quoting *United States v. Cannon*, 703 F.3d 407, 415 (8th Cir. 2013)); *See also United States v. Raplinger*, 555 F.3d 687, 694 (8th Cir. 2009)). The Eighth Circuit has further held "that images involving the sexual penetration of a minor girl by an adult male and images of an adult male performing anal sex on a minor girl or boy are per se sadistic or violent within the meaning of U.S.S.G. § 2G2.2(b)(3)." *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004) (citing *United States v. Diaz*, 368 F.3d 991, 992 (8th Cir. 2004)); *see also United States v. Vogelpohl*, 827 F. App'x 621, 622 (8th Cir. 2020).

Such images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor. They also

> bespeak a sadistic intent to achieve sexual pleasure through the necessarily violent depiction of a minor as either a sexual object ripe for or deserving of sexual exploitation, or as a sexual subject desirous of and complicit in his or her own sexual exploitation.

*Belflower*, 390 F.3d at 562.

At trial, the Court received into evidence several examples of the types of child pornography found on Burton's devices. Those images and videos support the enhancements described above. Additionally, SA Amber Mann has viewed many of the images and video. She wrote a report describing several of the files. The government intends to offer that report as Government's Exhibit 88 at sentencing. (Filing 98-3) SA Mann will testify that the report contains accurate descriptions. The material described by Mann supports the finding for both enhancements. The few examples described by Mann include the sexual penetration of a victim who appears to be approximately five years old, and another victim who is approximately six to eight years old. Both enhancements are warranted.

The government believes the focus of Burton's objection will not be on whether the material meets the above enhancements, but rather on the issue of whether Burton possessed those images and videos. (PSR, pp. 23-24) As the Court will recall, the metadata for most of the child pornography showed dates either predating when Burton went into custody for his earlier conviction in February 2007, or after his release from custody in February 2018. (The metadata can be found in Government's Trial Exhibits 64B, 67B, 70B, 71B, 73B, and 75B.) Additionally, as the defendant's expert testified, the metadata for some of the material shows some files were viewed by someone during the period when Burton was in prison. As the evidence at trial showed, the most likely culprit to have viewed the material during that period was Burton's now deceased father.

In the PSR, Burton states that some of the media had "creation dates" during the period when Burton was in custody. Burton, however, is mistaken. The trial testimony showed that some of the material had been viewed during

that period, not that it was created during the period. Moreover, the files which had been viewed while Burton was in custody were still found among the other child pornography files, and on the same devices, which Burton possessed.

The trial evidence supports a finding that Burton possessed all the material found during the search, and that he jointly possessed the material which was viewed during the period of Burton's incarceration. That same material was found among thousands of other files which were still in Burton's possession when the search warrant was executed on November 17, 2020. Joint possession is a sufficient basis to assess guideline enhancements. *See e.g., United States v. Brooks-Davis*, 984 F.3d 695, 700 (8th Cir.), *cert. denied,* 211 L. Ed. 2d 62, 142 S. Ct. 161 (2021); *United States v. Banks*, 43 F.4th 912, 919 (8th Cir. 2022); and *United States v. Fisher*, 965 F.3d 625, 630 (8th Cir. 2020).

### III.    The Enhancement for Distribution Applies.

The PSR assessed a two-level enhancement, under § 2G2.2(b)(3)(F), because Burton's offense involved the distribution of child pornography. (PSR ¶ 55) SA Amber Mann will testify that peer-to-peer file sharing software was found on some of the devices. That software included Ares, FrostWire, Freenet, and Usenet. Moreover, the testimony at trial, including Burton's own testimony, showed that he is a sophisticated computer user. He testified that he previously held a computer networking position before his prior conviction, and that he has received extensive computer training.

For purposes of the 2G.2.2(b)(3) guideline enhancement for distribution, the Guidelines provide a broad definition of what constitutes "distribution" defining it as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." § 2G2.2 n.1.

In *United States v. Durham*, 618 F.3d 921, 930 (8th Cir. 2010), the Eighth Circuit held that an unsophisticated user who doesn't know that his file-sharing software uploads data isn't subject to a distribution enhancement.

*Id.* at 931. It can, however, be applied if there are other facts—such as, for instance, evidence of a defendant's technological sophistication—supporting an inference that the defendant knew how the software worked. *See id.* at 929. *United States v. Lynch*, 757 F.3d 780, 782 (8th Cir. 2014). And "[a]bsent concrete evidence of ignorance—evidence that is needed because ignorance is entirely counterintuitive—a fact-finder may reasonably infer that the defendant knowingly employed a file sharing program for its intended purpose." *United States v. Dodd*, 598 F.3d 449, 452 (8th Cir. 2010).

The evidence in this case shows that Burton possessed a substantial collection of child pornography, and that he also possessed file sharing software. Additionally, Burton himself testified that he is a sophisticated computer user having previously worked in the computer industry and having completed substantial computer training to be competitive in that field. Those facts, considered together, support application of the enhancement.

### IV. Burton Possessed far More than 600 Images.

The PSR found that Burton possessed more than 600 images and that a five-level enhancement applied under § 2G2.2(b)(7)(D). (PSR ¶ 58) In the PSR, Burton indicated his intention to object to that finding, and basing his argument on deleted and duplicate images. (PSR, p. 24) SA Amber Mann reports having located 3,214 images and videos. (Filing 98-3) Without considering that each video represents the equivalent of 75 images (see § 2G2.2 n.6(B)(ii)), more than five times the number files were found in Burton's possession than are required to warrant a five-level enhancement.

The Court received into evidence at trial spreadsheets itemizing numerous child pornography files found on multiple devices. (See Government's Trial Exhibits 64B, 67B, 70B, 71B, 73B, and 75B.) Using those spreadsheets, with additional testimony from SA Mann, the government will

demonstrate at sentencing that the number of images far exceeds 600, even if the court were to disregard deleted and duplicate images.[2]

## V. Burton Sought to Obstruct Justice.

The PSR assessed a two-level enhancement, pursuant to § 3C1.1, for obstruction of justice. (PSR ¶ 61) A two-level enhancement applies when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, [or] prosecution … of the instant offense of conviction[.]" USSG § 3C1.1. At trial, Burton attempted to cast blame on his now deceased father. Burton's explanation, however, has changed several times. Burton was home at the time when the search warrant was executed on November 17, 2020. SA Jeffrey Tarpinian testified that he interviewed Burton while other agents were searching Burton's home. Tarpinian explained that Burton's IP address had accessed a couple of TOR child pornography websites. Burton acknowledged that he was familiar with TOR, but denied having accessed or viewed child pornography. Burton said only he and his father lived at the home and speculated that maybe someone else had been accessing their WiFi network. As Tarpinian explained, however, their WiFi network was password protected.

Burton agreed to participate in a polygraph interview on December 8, 2020. SA Lara Zeisler testified that at the beginning of the interview, Burton said his father may be the one responsible for accessing TOR child pornography websites. Burton said his father was computer savvy for his age. Burton also admitted to having accessed the TOR network himself several times since his release from custody in February 2018. He further explained that he had learned how to us the "Tails" program, which helps someone

---

[2] The government does not agree that deleted images should be disregarded. They still would have been images possessed by the defendant at least at one point, even if he deleted them later. However, the government will show that even when deleted and duplicated images are ignored, the total number of images exceeds the 600-image threshold.

accessing the TOR network further hide their activity.[3] Burton estimated he had accessed the TOR network using the Tails program more than 100 times since his release from prison.

Following the polygraph portion of the interview, Burton was asked again about what had happened. After the polygraph exam, Burton said it was "highly unlikely" his then 89-year-old father would have been able to access the TOR network. Following the polygraph exam, Burton said he did not know why his IP address would have been seen accessing child pornography websites. Burton said he might have unintentionally clicked on a link to a child pornography website because the link wasn't clear about where it led.

At trial, Burton's story changed again. He reverted to the explanation that his father was computer savvy for his age, that his father had sexually assaulted minors, and must have been the person responsible for all the child pornography found in the home. Burton also admitted to having written a letter to SA Tarpinian only a few days after his father died. In that letter, Burton tried to cast blame on his deceased father.

"[C]ommitting perjury at trial constitutes an obstruction of justice within the meaning of § 3C1.1." *United States v. Garcia*, 61 F.4th 628, 631 (8th Cir. 2023) (quoting *United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2004)); see also USSG § 3C1.1, comment. (n.4(B)). However, "the district court cannot impose the enhancement 'simply because a defendant testifies on his own behalf and the jury disbelieves him. ... Instead, the district court must 'conduct an independent evaluation and determine whether the defendant committed perjury.'" *Garcia*, 61 F.4th at 632 (quoting *United States v. Gomez-Diaz*, 911 F.3d 931, 936 (8th Cir. 2018); and *United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2004)). When a defendant's "false testimony was not a result of

---

[3] As the Court will recall from the trial testimony, "Tails" is a program which will enable a computer to boot up to a thumb drive, rather than accessing the computer's hard drive. Tails uses a Linux operating system to run the TOR web browser and access the TOR network through a thumb drive. Booting up to the thumb drive leaves no trace on the computer's hard drive that the computer had accessed the TOR network.

confusion or faulty memory, ... the false testimony constituted an obstruction of justice." *United States v. Young*, 613 F.3d 735, 749 (8th Cir. 2010).

Burton's attempt to shift blame to his deceased father, and his changing story about whether his father had the technological know-how to access the TOR network, were material and knowingly false statements. Burton's trial testimony contradicted his initial explanation the day the search warrant was executed when he said he did not know who might have accessed child pornography websites from his IP address. His trial testimony also contradicted his admission following the polygraphy exam that it was "highly unlikely" his father would have been able to access the TOR network. After his father died, Burton's story changed back to claiming his father was computer savvy as Burton tried to cast all the blame on him. The issue of who was ultimately responsible for downloading the extensive collection of child pornography was certainly a material fact. And Burton's changing stories about whether his father possessed the computer skills to access the TOR network show that his false statements were not the result of confusion or a faulty memory. His changing stories show Burton knew his trial testimony was false. The Court should find that Burton committed perjury and assess the obstruction of justice enhancement.

## VI. The Government Intends to Present Testimony at Sentencing.

The government intends to call SA Mann as indicated above. It's anticipated that her testimony will take approximately a half hour. With the other usual sentencing procedures, the sentencing hearing should take approximately one hour.

## CONCLUSION

The government respectfully requests that the Court sustain its objection to the PSR and find that Burton engaged in a pattern of activity involving the sexual abuse of a minor. The government further requests that the Court overrule Burton's anticipated objections to the guideline enhancements. The total offense level would then be 40. Under criminal history category III, the guideline range would be 360 months to life. Burton, however, faces a statutory

maximum sentence of twenty years, which is substantially below his guideline range. Imposing a sentence even further below his guideline range would fail to reflect the seriousness of Burton's offense, it would not provide a just punishment, and it would fail to meet the 18 U.S.C. § 3553(a) factors. The government submits that a twenty-year sentence is warranted in this case.

UNITED STATES OF AMERICA,

Plaintiff

STEVEN A. RUSSELL
United States Attorney
District of Nebraska

By:   _____
MATTHEW R. MOLSEN, #22693
Assistant U.S. Attorney
487 Federal Building
100 Centennial Mall North
Lincoln, NE  68508-3865
Tel: (402) 437-5241
Fax: (402) 437-5390
E-mail: Matthew.Molsen@usdoj.gov